INB BANKING COMPANY,
Appellant–Plaintiff,

v.

OPPORTUNITY OPTIONS, INC., David
A. Carter, and Marilyn P. Carter,
Appellee–Defendant.

No. 13A01–9204–CV–102.

Court of Appeals of Indiana,
First District.

Aug. 31, 1992.

Rehearing Denied Oct. 29, 1992.

Ronald R. Fifer, Sites & Harbison, Jeffersonville, for appellant-plaintiff.

Marcus M. Burgher, Corydon, for appellee-defendant.

BAKER, Judge.

Plaintiff-appellant INB Banking Company appeals the trial court's judgment favoring defendant-appellees Opportunity Options, Inc., David A. Carter, and Marilyn P. Carter (collectively, Opportunity Options). We address the following issues:

I. Whether the trial court erred in determining INB was required to give Opportunity Options written notice before it could declare Opportunity Options in default and foreclose the mortgage, and, if so, whether it gave that notice.

II. Whether Opportunity Options's failure to cross-appeal precludes relief.

III. Whether the trial court erred in awarding $200 in attorney fees.

## FACTS

David and Marilyn Carter manage Opportunity Options, a real estate development business. After signing a note dated November 10, 1983, Opportunity Options borrowed $66,000 from a bank later acquired by INB. The loan was secured with a mortgage on Crawford County real estate. At Opportunity Options's request, in January 1986 INB released this security and substituted another parcel of land in its place. The 1983 mortgage was replaced with another written agreement. The underlying note was not altered.

Opportunity Options missed its April 15, 1990, payment of $5,387.41. INB mailed a letter dated July 10, 1990, bringing this fact to Opportunity Options's attention. Payment did not come, and INB did not act on the non-payment.

Opportunity Options also missed its October 15, 1990, payment. By a letter dated November 15, 1990, INB advised Opportunity Options that "[s]hould the [two missed] payments not be received by November 30, 1990, the bank will file suit immediately." *Record* at 150. The letter also informed Opportunity Options the accompanying attorney fees, authorized under the parties' agreement, would amount to about $200. By agreement, the November 30th deadline was extended to December 7, 1990.

Opportunity Options failed to pay the amount due, $10,774.82, by the new dead-

line. On December 10, 1990, INB set-off $13,362.37 against Opportunity Options's checking account. Two days later, it set-off another $22,731.92.

On December 28, 1990, INB filed a foreclosure action seeking recovery of the remaining debt, less the set-off. INB offered evidence that as of November 6, 1991, it had incurred over $12,000 in attorney fees.

The trial court 1) rendered a judgment which denied INB foreclosure of the mortgage, 2) allowed INB to retain the set-off funds in full and apply them to the balance due, 3) granted INB $200 in attorney fees, and 4) ruled against Opportunity Options on its counterclaim for return of the set-off in excess of the delinquent amount. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

The trial court ruled both parties in this case failed to meet their burdens of proof: INB on its foreclosure action and Opportunity Options on its counterclaim for return of excess set-off. Thus, we are confronted with negative judgments. To appeal a negative judgment successfully, a party must establish the judgment rendered is contrary to law. *Williams v. City of Indianapolis* (1990), Ind.App., 558 N.E.2d 884. We reverse negative judgments as contrary to law only when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to but one conclusion, and the trial court reached a different conclusion. *Id.*

### I

### Notice

The first issue confronting us is whether INB was required to give Opportunity Options notice that the latter was facing default and subject to loan acceleration and foreclosure. INB argues no notice was required, but if notice was required, it was given.

Our first task when confronted with contract interpretation is to ascertain the intent of the parties. *Edwards v. Beall* (1881), 75 Ind. 401. "In interpreting a written contract the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties." *First Federal Savings Bank of Indiana v. Key Markets, Inc.* (1990), Ind., 559 N.E.2d 600, 603. We endeavor to give words their plain and usual meaning unless, judging from the contract as a whole and the particular subject matter, it is clear some other meaning was intended. *Bratton v. Yerga* (1992), Ind.App., 588 N.E.2d 550, 554. Particular words and phrases cannot be read alone; we must gather the parties' intentions from the contract considered as a whole. *Id.*

When we find a contract's terms to be clear and the intent of the parties apparent, we will require the parties to perform consistently with the bargain each struck, absent equitable considerations like fraud, misrepresentation, undue influence, and the like. *First Federal Savings, supra*, at 604. If, however, the contractual language is ambiguous, inconsistent, or uncertain, the intent of the parties must be determined by rules of construction. A contract is ambiguous only if reasonably intelligent people could honestly find the contract's provisions susceptible to more than one interpretation. *P.C. Management, Inc. v. Page Two, Inc.* (1991), Ind. App., 573 N.E.2d 434. All ambiguities are strictly construed against the party who prepared the document. *Binford v. Shicker* (1990), Ind.App., 553 N.E.2d 845, *trans. denied.*

Turning, then, to the note, we find the following language:

**5. BORROWER'S FAILURE TO PAY AS REQUIRED**

\* \* \* \* \* \*

#### (B) Notice from Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 30

days after the date on which the notice is mailed to me.

### (C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

\*　　\*　　\*　　\*　　\*　　\*

### 10. THIS NOTE SECURED BY A MORTGAGE

In addition to the protections given to the Note Holder under this Note, a Mortgage, dated *November 10, 1983* protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Mortgage describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

*Record* at 143–44. The November 10, 1983, mortgage required that INB "shall mail notice" before foreclosing. *Record* at 119. This mortgage, however, was "satisfied, released, and discharged" by agreement in 1986 and was replaced with a second mortgage agreement. Under the latter document, Opportunity Options agreed INB could foreclose "without notice" upon Opportunity Option's failure to pay, when due, an installment or portion of an installment. *Record* at 146.

We cannot readily ascertain the parties' intent on the issue of notice. In our opinion, the written agreements are insolubly ambiguous. The language of sections (5)(B) and (C) is subject to at least three reasonable interpretations.

First, as INB asserts, the language "may send me a written notice" suggests no notion of obligation or duty to send notice. Commonly understood, the word "may" denotes a degree of permission or possibility, not obligation. AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 808 (4th printing 1969). Because the parties did not agree that INB must send written notice, the argument goes, written notice was not required.

Another reasonable interpretation, however, reaches the opposite conclusion by viewing section (5) as a process to be used in the event Opportunity Options did not make the full amount of each monthly payment on time. In such a case, INB could either give Opportunity Options written notice that if it did not pay the overdue amount by a certain date, it would be in default (i.e., give Opportunity Options a deadline) or it could ignore the missed or late payment. If a deadline is given and missed, default occurs. If default occurs, INB could then—and only then—require immediate payment of the full amount of principal and interest.

Keeping in mind that Opportunity Options could not be required to pay the full amount of principal and interest until it was in default, section (5) describes the process by which the parties agreed default would occur. Under section (5)(C), default occurs when an overdue payment is not made by the deadline imposed. Hence, the giving—and missing—of the deadline are both prerequisites to default. Therefore, notice is necessary before default may occur.

If INB decided not to issue a deadline, it could not then find Opportunity Options in default. The "may send written notice" language merely gives INB the opportunity to undertake the first and necessary step on the road to collecting the full principal and interest after default. It does not give INB the choice of finding Opportunity Options in default immediately after a missed or late payment whether or not written notice was sent. To the contrary, the language preconditions default upon, in part, written notice.

A third reasonable interpretation is that sections 5(B) and (C) simply do not address the issue of whether notice must be given before default. The language gives INB one course of action but does not exclude all others. Although the language allows INB to give notice, it does not reveal whether notice is required or not. Perhaps

that issue was meant to be left to the mortgage agreement.

■ The note's language on the issue of the necessity of notice is ambiguous. When the language of the parties' contract is ambiguous and susceptible to more than one interpretation, as is the case here, we construe the contract against the party responsible for the wording. *Binford, supra.* INB does not deny it was responsible for the language used in the note. We hold written notice was required and that the notice must allow 30 days to cure.

■ INB argues next that even if notice was necessary, its letters of July 10, 1990, November 15, 1990, and November 20, 1990, fulfilled the requirement. We disagree.

As an initial matter, we observe the latter two letters imposed a November 30, 1990, deadline, thus denying Opportunity Options 30 days to respond, as required by section (5)(B). Even the extension to December 7, 1990, did not allow for the full 30 day period. Indeed, INB foreclosed Opportunity Options's opportunity to cure the delinquency within the 30 day period when it set-off the latter's funds on December 10, 1990, and December 12, 1990. These two letters did not afford Opportunity Options the notice to which it was entitled.

■ The letter of July 10, 1990, reads as follows:

July 10, 1990

RE: Commercial Loan # 0100925–88360
Dear Mr. Carter:

As you are well aware, the semi-annual payment of $5,387.41 on the above referenced note is past due for 4–15–90. If this payment is not received by 7–25–90, we will ask our attorney to make a formal demand for the remaining balance of principal and interest due on the note. This account has been delinquent on a number of occasions and any future delinquency will not be tolerated.

Should you have any questions, I can be reached at (812) 738–5265.

Sincerely,

/s/

Thomas M. Jones
Commercial Lending Officer

*Record* at 149.

■ Foreclosure, being an equitable remedy, lies solely within the discretion of the trial court. *Beneficial Mortgage Co. v. Powers* (1990), Ind.App., 550 N.E.2d 793, *trans. denied.* It is an extraordinary and drastic remedy, which in part, accounts for some of the more stringent rules associated with foreclosure. One such relevant rule is that "[a] mortgagee's election to accelerate a note must be *clear and unequivocal."* (Original emphasis.) *First Federal Savings and Loan Ass'n of Gary v. Stone* (1984), Ind.App., 467 N.E.2d 1226, 1232, *trans. denied.*

The July 10th letter is not clear and unequivocal and does not achieve the written notice contemplated in section (5)(B) of the note. It does not tell Opportunity Options that if it does not pay the overdue amount by a certain date, it will be in default. It does not allow 30 days to cure the delinquency. The letter merely states INB will ask its attorney to make a formal demand. The trial court did not err in finding INB gave Opportunity Options inadequate notice, and it did not abuse its equitable discretion by denying INB's foreclosure action. INB has not demonstrated this aspect of the judgment was contrary to law.

### Set-off

■ When a depositor becomes indebted to its bank, a mutual debtor-creditor relationship arises which justifies a bank's right of set-off. *Citizens National Bank of Whitley County v. Mid–States Development Co., Inc.* (1978), 177 Ind.App. 548, 380 N.E.2d 1243. This common-law principle is codified in our statutory scheme. "As against a customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft." IND.CODE 26–1–4–401.

■ It is not disputed that two of Opportunity Options's scheduled payments, amounting to $10,774.82, were overdue. INB wrote Opportunity Options on November 15, 1990, and demanded payment of

exactly that amount. INB, however, acted too soon on that letter. The parties' agreement as expressed in the note required INB to allow Opportunity Options 30 days to cure the deficiency. INB gave notice on November 15, 1990, and made its first set-off on December 10, 1990, five days sooner than the agreement permitted.

The inescapable conclusion is that on December 10, 1990, and on December 12, 1990, the days INB set-off the amounts of $13,362.37 and $22,731.92, respectively, Opportunity Options was delinquent only, not in default. Because Opportunity Options was not in default, INB could not yet foreclose and demand immediate payment of the entire outstanding principal and interest. INB was entitled only to the amount properly payable: $10,774.82 and the cost of reasonable attorney fees associated with the collection of that amount. Instead, INB set-off more than three times the figure due. The trial court erred to the extent it permitted INB to retain set-off in excess of $10,974.82, representing the overdue amount and the $200 attorney fee for collecting the overdue amount.

## II

### Cross–Appeal

■ Opportunity Options argued at trial and in its appellees' brief that it was entitled to recoup the excess set-off. It did not initiate a cross-appeal concerning the trial court's failure to award it the excess. INB contends Opportunity Option's failure to initiate a cross-appeal precludes recovery. We disagree.

We direct INB's attention to Ind. Trial Rule 59(G), which states, in relevant part, "[I]f a praecipe rather than a motion to correct error is filed by a party in the trial court, the opposing party may raise any grounds as cross-errors ... in the appellate brief...." Under T.R. 59(G), then, Opportunity Options was not required to initiate a cross-appeal on the issue of excess set-off; raising the allegation of error in its appellate brief was sufficient to trigger appellate review. *See Mickens v. State* (1992), Ind., 596 N.E.2d 1379 (under T.R. 59(G), so long as State affirmatively argued waiver in post-conviction court, it can argue waiver in appellee brief without first filing cross-appeal).

## III

### Attorney Fees

■ INB insists the trial court erred in awarding only $200 in attorney fees rather than the $12,327.57 INB incurred in attempting to foreclose on Opportunity Options. It demands payment for the expenses involved in bringing the foreclosure action against Opportunity Options.

The trial court did not err in limiting INB's attorney fee award to only those expenses involved in collecting the two delinquent payments. Under the agreement, INB was not entitled to foreclose until Opportunity Options was in default, and Opportunity Options was never in default because INB did not provide the requisite notice of impending default demanded by the note's language. Because INB had no right to foreclose, the trial court correctly disallowed the more than $12,000 in fees associated with the foreclosure action; it also correctly characterized the bank's actions as an "economic waste." *Record* at 23.

### Conclusion

The trial court correctly determined the parties' agreement required INB give Opportunity Options written notice that if the delinquent payments were not satisfied, default would result. It also correctly determined INB did not meet the requirements of the notice provisions. It erred, however, in concluding INB's set-off cured the default, because at no time was Opportunity Options in default. The trial court also erred to the extent it prohibited Opportunity Options from recouping the excess set-off. Finally, the trial court did not err in awarding INB only $200 in attorney fees.

INB is entitled to retain the $10,774.82 overdue amount it set-off. INB is also entitled to the $200 attorney fee associated with the collection of that overdue amount. Pursuant to Ind.Appellate Rule 15(N), we therefore amend the judgment in favor of

INB to the sum of $10,974.82, together with costs.

The judgment is affirmed in part, reversed in part, and amended.

RATLIFF, C.J., and BARTEAU, J., concur.