**In the Matter of the Supervised ESTATE OF Hubert R. McCLENAHAN, Deceased, Appellant,**

v.

**Robert BIBERSTEIN, Appellee.**

No. 01A04–9604–CV–150.

Court of Appeals of Indiana.

Oct. 11, 1996.

---

John M. Clifton, Jr., Barrett & McNagny, Fort Wayne, for Appellant.

J. Frank Kimbrough, Wilks & Kimbrough, Fort Wayne, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

George McClenahan appeals from the trial court's order approving attorney and co-personal representative fees for Robert Biberstein in the matter of the estate of Hubert McClenahan.

We affirm.

### FACTS

Born in 1900, Hubert McClenahan ("Hubert") practiced law in Adams County for over fifty years. He and his wife Margaret sought the counsel of attorney Robert Biberstein for estate planning services. Three times during 1991 and 1992 Biberstein drafted wills and revocable trusts for the McClenahans which they subsequently revoked. In June of 1992, new wills and trust agreements were drafted by Biberstein. The wills were executed on June 30, 1992, as were the trust agreements. On July 11, 1992, Hubert died. Within two weeks, Mrs. McClenahan filed a renunciation of her right to serve as personal representative under the will, and the will was probated. George McClenahan ("George"), one of the two McClenahan sons, and Biberstein were appointed co-personal representatives, to administer the estate with supervision. Biberstein was also to serve as attorney to the estate.

George, an attorney retired after more than forty years of practice in California, instructed Biberstein to handle the affairs of the estate and returned to his home in California. George told Biberstein he "did not expect special consideration" or a "courtesy discount" with respect to fees because his father and he were lawyers. (R. 93, 120, 121). George also told him that he wanted no fee for his service as co-personal representative. Having already performed the desired estate planning services, preparation of Mrs. McClenahan's renunciation, and filings necessary to initiate probate, Biberstein proceeded to conduct the administration of the estate. He collected certain sums for the estate and paid various bills; sold some personal property and arranged for the auction of others; sold two motor vehicles; and sent notices to individuals whose wills were found in the Hubert's office safe. Further, he arranged required legal notice publications and filed several amended federal and state income tax returns as well as an estate asset

inventory. He prepared the Indiana Inheritance Tax and Federal Estate Tax returns. Before submitting the tax returns due nine months after death, Biberstein requested The First State Bank of Decatur, which was co-trustee with George of Hubert's trust, to issue checks for the taxes due and also a check to him for his fees as attorney and co-personal representative; the checks were issued. Biberstein charged $27,170 for attorney fees plus one-half that amount for personal representative services, for a total of $40,755, which he computed based upon his fee schedule applied to the federal tax return gross estate of $855,527.56. The federal tax return reflected this charge as an expense.

On March 30, 1993, when he filed the tax returns, Biberstein wrote a letter to George which included a series of estate documents, including the federal tax return and a statement for his fees indicating his computation of the total. George responded with a letter to Biberstein expressing his strong objection to the amount of Biberstein's fees. Shortly thereafter, George filed a petition "to determine co-executor and attorney fees" and "to require co-executor and attorney to reimburse estate for excess fees," alleging he "was totally unaware of the fees and charges" and that the fees were "exorbitant, unreasonable and ... without any rational basis in fact." (R. 25, 26).

The trial court conducted an evidentiary hearing on June 25, 1995. Biberstein testified that George was present at a meeting in 1991 when he discussed estate planning with Hubert and explained the rates he charged. Biberstein told the court about the concern that the trust might be disallowed as not funded at the time of death and how then approximately $1,850,000 would have gone into Margaret McClenahan's estate "because of the way things were held." (R. 167). Biberstein had practiced law over thirty years and handled from three to four hundred estates. Biberstein always used his schedule to compute fees. He did not keep records of the time he spent on the estate but did "know [he] spent a lot of time" because the circumstances "required a lot of time being spent." (R. 175). Although Biberstein had been paid for the first three times he prepared the McClenahan wills and trusts, he was never paid for the final will and trust documents. The latter documents resulted in a substantial tax savings. McClenahan's was not an ordinary estate, Biberstein said, because "the handling required me to do an additional number of things that I normally would not encounter in a straight estate." (R. 144).

The county probate rule in effect at the time of this estate was introduced. The fee schedule differs from that used by Biberstein,[1] but the rule expressly states it "is a fee *guideline,* " and "suggested" for "usual and ordinary services" but not when "extraordinary work" is required. (R. 133A) (emphasis added). The rule does provide that personal representative fees are one-half the attorney fees.

An attorney who had practiced twenty years in the same town as Biberstein, with 25% of his practice in estate work, said he always charged a fee according to a personal schedule. He would have applied his fee schedule, which also differed from that in the county probate rule, to the gross estate on the Indiana Inheritance Tax form, and the resulting charge would have been $39,015. After reviewing the facts of the McClenahan estate, he testified that the fee charged by Biberstein "was fair and reasonable and in line with the standard fee that's charged for estates like Mr. McClenahan's." (R. 186).

A second attorney from the county, with the majority of his practice in estate work, testified that he also followed a fee schedule. He believed the fee charged by Biberstein to be reasonable and observed that the matter involved "making sure that an unfunded trust [was] funded" and had "the very good result" of "a tremendous amount of tax" savings. (R. 224, 227).

Pursuant to the request of the parties, the court entered numerous findings of fact, concluded the fees were "reasonably commensurate to the amount of time and work involved" and bore "a reasonable relation to the amount of services actually provided and

---

1. According to the court's calculation, the rule would have produced a $26,053.00 total fee.

the reasonable value of those services," (R. 64), and approved the fees.

### DECISION

■ According to statute, both the attorney for the estate and the personal representative shall be allowed compensation for services to the estate "as the court shall deem just and reasonable." Ind.Code 29–1–10–13. Because the court made findings pursuant to Ind. Trial Rule 52 in order to reach its conclusion that Biberstein's fees were reasonable and then ordered them approved, we undertake our review guided by the recent summary thereon by our supreme court.

When a trial court has made special findings of fact, as it did in this case, an appellate court reviews the sufficiency of the evidence in a two step process. First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial court's conclusions of law. An appellate court shall not set aside the findings or judgment unless clearly erroneous, Ind.Trial Rule 52(A); and it shall not reweigh the evidence or determine the credibility of witnesses. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings.

*Estate of Reasor v. Putnam County,* 635 N.E.2d 153, 158 (Ind.1994) (citations omitted). Moreover, George failed to prove to the trial court that the fees were not reasonable and is, therefore, appealing from a negative judgment. To prevail on appeal of a negative judgment, a party must establish the judgment is contrary to law—that the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to but one conclusion, and the trial court reached a different conclusion. *INB Banking v. Opportunity Options,* 598 N.E.2d 580, 582 (Ind.Ct.App.1992), *trans. denied.*

**2.** We further note that the court's findings specifically state that "[s]imply applying a formula or

### 1. *Evidence Insufficient*

■ George first claims the trial court erred in the fee award because there was no evidence of the time incurred and specific services rendered and the charge was computed based upon assets disclosed in the federal estate tax return. George refers us to *Matter of Estate of Meguschar,* 511 N.E.2d 307 (Ind.Ct.App.1987), *trans. denied,* for the proposition that "fees may not be determined by application of a percentage formula to the value of a gross estate." George's Brief at 14. However, what *Meguschar* actually says is that "reasonable fees cannot be arrived at *solely* by the application of a percentage formula to the value of the gross estate" and, accordingly, we "turn[ed] to a consideration of the evidence before the trial court as to attorney's fees." *Id.* at 311 (emphasis added). The findings indicate the trial court did consider a number of the factors *Meguschar* identified as properly "taken into account when determining fees." *Id.* Thus, its award was not based solely upon application of a percentage formula.[2]

■ George next cites a number of authorities for factors which may be considered by the trial court and proceeds to "set forth the factors articulated . . . and compare the facts admitted in evidence against said factors." George's Brief at 15. George particularly emphasizes that "Biberstein has *no time records detailing the time or specific services performed.*" *Id.* (emphasis in original). George asks that we consider the facts which he brings to our attention and conclude the evidence is "woefully insufficient for anyone to determine whether or not the fees charged were reasonable or excessive." *Id.* at 18. He further argues, on the second prong of his argument, that the court's "reasoning . . . is seriously flawed" because computation of Biberstein's fees should not involve assets which were in the trust and not part of Hubert's probate estate.

Both arguments ask that we reweigh the evidence before the trial court. As already noted, our review follows the analysis set in

schedule or hourly rate is not enough." (R. 64).

motion by use of T.R. 52. The court made the following findings: 1) Biberstein was not paid for the final estate plan; 2) George directed Biberstein to handle the affairs of the estate and indicated he did not desire any compensation as co-personal representative; 3) Biberstein performed a series of services enumerated by the court; 4) the trusts were not funded and vested until a few months after Hubert's death; 5) substantial tax savings resulted from Biberstein's successful estate planning efforts; 6) computation of fees under various scenarios produced varied results; and 7) expert testimony indicated Biberstein's fees were reasonable. Finally, the court

> considered the following factors: that the most crucial and valuable services performed were under severe time restraints, were prior to the administration of the estate, and were otherwise uncompensated; the labor performed; the nature of the estate; the skill requisite to perform the services properly and effectively; the fees customarily charged in Adams County for similar services; the amount involved and the results obtained; the testimony of other lawyers; the size of the estate; and that results extremely favorable for the estate and the heirs were achieved.

(R. 64).

■ George does not challenge any of the court's specific findings. However, we also share George's concern for the lack of evidence indicating the time expended on specific tasks, inasmuch as "the key is that the fees be reasonably commensurate to the amount of time and work involved in the administration of the estate." *Ford v. Peoples Trust and Sav. Bank,* 651 N.E.2d 1193, 1196 (Ind. Ct.App.1995), *trans. denied* (citing *Meguschar* at 311). Nevertheless, upon this record, the evidence supports the trial court's findings; the findings support the conclusion that the fees were reasonable; therefore, the judgment approving the fees was not clearly erroneous or contrary to law.

## 2. *County Fee Guideline*

■ As his second issue, George claims "the suggested fee guidelines of the Adams Circuit Court are contrary to law and even if

not, the court abused its discretion in approving attorney and personal representative fees in excess of said guidelines in the absence of evidence disclosing time expended, specific services rendered and extraordinary work performed." George's Brief at 19.

George posits the county fee guidelines conflicts with the common law and cites his previous reference *Meguschar.* As already discussed, his use of *Meguschar* was inapposite. Further, as indicated in FACTS, the trial court did not award fees in the amount which would result from application of the guidelines. George's additional short argument as to the lack of specificity with respect to evidence of time expended on various services and how Biberstein's work cannot be considered extraordinary seeks again to invite us to reweigh the evidence. Because the standard for review lies in the use of T.R. 52, George's arguments on his second issue must fail.

We affirm.

RILEY, and FRIEDLANDER, JJ., concur.