Gordon B. **DEMPSEY**, Appellant–Defendant/Cross–Appellee,

v.

George C. **CARTER** and Oleva Gay Carter, Appellees–Plaintiffs/Cross–Appellants.

No. 49A04–0209–CV–463.

Court of Appeals of Indiana.

Aug. 29, 2003.

Rehearing Denied Jan. 22, 2004.

Gordon B. Dempsey, Indianapolis, IN, Appellant Pro Se.

Matthew A. Griffith, Thrasher Buschmann Griffith & Voelkel, P.C. Indianapolis, IN, Attorney for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant/Cross–Appellee, Gordon B. Dempsey (Dempsey), appeals the trial court's Summary Judgment Entry and Decree of Foreclosure in favor of Appellees/Cross–Appellants, George C. Carter and Oleva Gay Carter ("the Carters," collectively).

We affirm, in part and reverse and remand, in part.

### ISSUES

Dempsey raises twelve issues on appeal, and the Carters raise one issue on cross-appeal, which we consolidate and restate as follows:

(1) Whether the trial court erred in granting summary judgment in favor of the Carters by entering an order of foreclosure against Dempsey;

(2) Whether the trial court erred in calculating the actual damages amount owed to the Carters;

(3) Whether the trial court erred in awarding the Carters' attorney fees and not awarding Dempsey attorney fees; and

(4) Whether the trial court erred in denying the Carters' request for judgment of forfeiture rather than foreclosure.[1]

### FACTS AND PROCEDURAL HISTORY

On or about August 26, 1999, the Carters and Dempsey executed and entered into a Land Contract. Under the Land Contract, the Carters agreed to sell and Dempsey agreed to purchase real estate commonly known as 602–4, 606–8, 612–14, 620–22, and 624–26 North Moreland Avenue, and 601–3, 605–7, 615–15 1/2, 615 A–B, 615 C–D, 615 E–F, 615 G–H, 615 I–J, 615 K–L, 621–23 and 625–27 North Tibbs Avenue, Indianapolis, Indiana (collectively the "Real Estate").

However, after several months, Dempsey defaulted under the terms of the Land Contract. Specifically, Dempsey: 1) failed to make monthly payments in the amount of $3,600.00 as required by paragraph 1(a)(2) of the Land Contract; 2) failed to pay the real property taxes due on the Real Estate; 3) failed to obtain and keep fire and casualty insurance on the Real

---

1. We note that Dempsey raises several additional issues that are moot, pursuant to Dempsey's pending bankruptcy case. Accordingly, we will not address Dempsey's claims concerning the pre-sale possession, and rental receipts on the Land Contract, and proper service and notice of the scheduled sale of the real estate.

Estate; and 4) failed to pay the sewer bills due on the Real Estate.

The original purchase price under the Land Contract was $500,000. Dempsey paid $5,000.00 down and received other credits, leaving an initial contract balance of $487,000.00. A final balloon payment would be due on September 1, 2009. Dempsey made monthly payments for a few months after the Land Contract was signed. However, almost all of the monthly payments were late. By January 2001, Dempsey's payments were irregular, and by May 2001, Dempsey completely stopped honoring his financial obligations to the Carters under the Land Contract.

On August 23, 2001, the Carters sent Dempsey a letter terminating his right to purchase the Real Estate under the Land Contract and accelerating payment of the contract balance. On September 5, 2001, the Carters filed their Complaint for Forfeiture or Foreclosure. The Carters sought possession of the Real Estate and to remove Dempsey from the Real Estate as permitted by paragraphs 14 and 15 of the Land Contract. Additionally, pursuant to paragraph 14 of the Land Contract, the Carters accelerated payment of the contract balance.

On November 1, 2001, the Carters filed their Motion for Summary Judgment and Order of Forfeiture. In the alternative, the Carters requested an order of foreclosure. On November 16, 2001, Dempsey filed his Cross–Motion for Summary Judgment.[2] On January 2, 2002, Dempsey filed his Memorandum in Opposition to Summary Judgment and designated evidence. On February 13, 2002, the summary judgment hearing was held.

On March 22, 2002, the trial court granted the Carters' Motion for Summary Judgment and Decree of Foreclosure. However, the trial court denied the Carters' request for an order of forfeiture. Additionally, the trial court ordered Dempsey to allow the Carters to collect rental income generated by the disputed Real Estate, which funds the Carters would use to pay the real property taxes, water and sewer bills, and insurance premiums for the Real Estate.

On April 22, 2002, Dempsey filed his Motion to Correct Error. On May 3, 2002, the Carters filed their Response to Dempsey's Motion to Correct Error. On July 30, 2002, a hearing was held on Dempsey's Motion to Correct Error. On that same date, the trial court denied Dempsey's Motion to Correct Error.

On August 26, 2002, a Decree of Foreclosure was sent to the Sheriff for sale of the Real Estate. The foreclosure sale was scheduled for October 16, 2002, and Dempsey received notice of the sale. The first notice contained an error in the date of the sale, and consequently, the Marion County Sheriff issued and served on Dempsey a second and corrected notice prior to the scheduled sale.

On August 27, 2002, Dempsey filed notice of his appeal. On October 10, 2002, Dempsey filed his Motion to Stay Sale Pending Appeal, and for Temporary Delay of Sale, to Allow for Hearing on Said Stay. On that same date, the Carters filed their Response to Defendant's Efforts to Delay Foreclosure Sale. On October 15, 2002, the trial court denied Dempsey's Motion and request to stay. On October 25, 2002, the day before the scheduled foreclosure sale, Dempsey filed for protection under Chapter 13 of the U.S. Bankruptcy Code in U.S.

2. We note that, Dempsey's motion was presented to the Court as a motion to dismiss; however, by operation of Ind. Trial Rules 12 and 56, the motion was converted to a motion for summary judgment by the submission of evidence outside of the pleadings.

Bankruptcy Court, Southern District of Indiana, Indianapolis Division (Bankruptcy Court) under Case No. 02–18007–AJM–14, and the automatic stay provisions of 11 U.S.C. Section 362 caused the cancellation of the foreclosure sale.

Dempsey continued to prosecute this appeal, causing the Carters to seek relief from the automatic stay in order to file this brief and prosecute the Carters' cross-appeal. On February 6, 2003, a hearing on the motion was held. At the hearing, the Bankruptcy Court granted the Carters relief from the automatic stay. This court also granted the Carters an agreed extension of time for the filing of this responsive brief and cross-appeal.

Dempsey now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Motion for Summary Judgment*

Dempsey contends that the trial court erred in granting the Carters' Motion for Summary Judgment. Specifically, Dempsey argues that the evidence presented to the trial court creates a genuine issue of material fact, thereby precluding the trial court's grant of summary judgment in the Carters' favor.

### A. *Summary Judgment Proceedings*

■ First, Dempsey alleges that the trial court erred in conducting the summary judgment proceeding. In particular, Dempsey contends that he was not given sufficient notice and proper service of the summary judgment proceeding. Conversely, the Carters argue that Dempsey was given sufficient notice of the summary judgment proceeding. As a result, the Carters maintain that the trial court conducted a proper summary judgment hearing.

Indiana Trial Rule 56(C), provides, in pertinent part:

The court shall conduct a hearing on the motion which shall be held not less than ten (10) days after the time for filing the response.

Here, the record shows that the Carters filed their Motion for Summary Judgment on November 1, 2001. The record also reflects that Dempsey filed his Memorandum in Opposition to Summary Judgment on January 1, 2002. The record indicates that Dempsey repeatedly requested a continuance on the summary judgment hearing. Although the Carters requested summary judgment by motion on November 1, 2001; nevertheless, the summary judgment hearing was not held until February 13, 2002. This was at least 10 days after Dempsey filed his response motion. Consequently, the timeline required by T.R. 56(C) was honored. Therefore, we find that the trial court properly conducted the summary judgment proceeding.

### B. *Standard for Motion for Summary Judgment*

In reviewing the trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *American Family Mut. Ins. Co. v. Hall,* 764 N.E.2d 780, 783 (Ind.Ct.App.2002). We consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* Summary judgment should be granted only when the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court on appeal that

the trial court's ruling was improper. The grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Ayres v. Indian Heights Volunteer Fire Dep't. Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

C. *Default Under the Land Contract*

In the instant case, Dempsey contends that the record does not support the trial court's finding of summary judgment in favor of the Carters because there was no default under the Land Contract. We disagree.

The Land Contract, paragraph 14, specifically defines "Event of Default" to include the following:

(a) Thirty days lateness in payment of a monthly contract installment, real estate tax payment, or insurance premium.

(b) Nonperformance for forty-five days, as to any other term.

(Appellant's App. p. 22).

Now, Dempsey argues that he did not receive sufficient notice and time to cure his defaults as required under the Land Contract. Dempsey alleges that there has been no default under the Land Contract because he was not given a proper thirty-day written notice to cure his default. As a result, Dempsey claims that the trial court erred in entering summary judgment against him for defaulting under the Land Contract. Alternatively, the Carters maintain that Dempsey was given sufficient notice and time to cure his defaults.

■■■ Our first task when confronted with contract interpretation is to ascertain the intent of the parties. *INB Banking Co. v. Opportunity Options, Inc.*, 598 N.E.2d 580, 582 (Ind.Ct.App.1992). In interpreting a written contract the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. *Id.* We endeavor to give words their plain and usual meaning unless, judging from the contract as a whole and the particular subject matter, it is clear some other meaning was intended. *Id.* Particular words and phrases cannot be read alone; we must gather the parties' intentions from the contract considered as a whole. *Id.*

■■■ When we find a contract's terms to be clear and the intent of the parties apparent, we will require the parties to perform consistently with the bargain each struck, absent equitable considerations like fraud, misrepresentation, undue influence, and the like. *Id.* If, however, the contractual language is ambiguous, inconsistent, or uncertain, the intent of the parties must be determined by rules of construction. A contract is ambiguous only if reasonably intelligent people could honestly find the contract's provisions susceptible to more than one interpretation. *Id.* All ambiguities are strictly construed against the party who prepared the document. *Id.*

■■■ In examining the Land Contract, we find the following language, in paragraph 14:

Upon any event of Default, as defined herein remaining uncured after thirty days written notice of said Event of Default, or at any time thereafter, the entire Contract Balance, including accrued unpaid interest, shall at [the Carters'] option become immediately due and payable, without notice, presentment, demand, protest, notice of protest, or other notice or dishonor or demand of any kind, all of which is expressly waived by [Dempsey], and [the Carters] shall have the right to pursue any and all legal or equitable remedies to collect said funds, foreclose, or otherwise protect [the Carters'] rights.

(Appellant's App. p. 22).

In construing the Land Contract with the facts of this case, we find that on or

about August 23, 2001, the Carters' counsel sent a letter (Notice Letter) to Dempsey notifying him of his defaults as follows: failed to make monthly payments in the amount of $3,600.00 as required by paragraph 1(a)(2) of the Land Contract; failed to pay the real estate taxes due on the Real Estate as required by paragraph 2(a) of the Land Contract; failed to obtain and keep fire and casualty insurance on the Real Estate, as required by paragraph 2(c) of the Land Contract; and failed to pay the water and sewer bills due on the Real Estate as required by paragraph 9 of the Land Contract. (Appellant's App. pp. 18–24, 47–8, 66). Dempsey acknowledges receipt of the Notice Letter via fax, U.S. first class mail, and certified mail, return receipt requested. Although Dempsey claims that the letter was vague and ambiguous, our review of the record indicates otherwise.

In particular, the record reflects that the Notice Letter dated August 23, 2001, clearly stated that the Carters were terminating Dempsey's rights to purchase the Real Estate under the Land Contract, pursuant to the terms of the Land Contract, as a result of his noncompliance. Thus, according to the Land Contract, Dempsey had thirty days to cure his default. Our review of the record discloses that Dempsey had to cure his default by September 22, 2001, thirty days after the August 23, 2001, Notice Letter. However, the record is devoid of evidence that Dempsey met this deadline.

Therefore, we find the Land Contract's terms to be clear and the parties' intentions apparent. *See INB Banking Co.,* 598 N.E.2d at 582. We further find that Dempsey was given sufficient time to cure his default, yet failed to make any payments on the Land Contract. Consequently, the evidence presented by the Carters that Dempsey defaulted under the terms of the Land Contract is uncontroverted and the trial court properly granted summary judgment in the Carters' favor.

## II. *Actual Damages Calculation Amount*

Dempsey also alleges that the evidence does not support the actual damages amount owed to the Carters. Specifically, Dempsey argues that the trial court erred in calculating the principal, interest, tax and insurance amount that is owed by Dempsey based upon his multiple defaults. As a result, Dempsey contends that the trial court erred in issuing the actual damages award to the Carters.

The Carters concede that the judgment amount was inaccurate. Nevertheless, the Carters contend that Dempsey waived this issue for our review. Specifically, the Carters maintain that Dempsey failed to designate or submit evidence to create a legitimate factual dispute concerning the Carters' calculation of the actual damages amount owed. We disagree.

Here, the record is unclear over the actual damages amount owed by Dempsey. In fact, the Carters concede that there was an error in the formula of the spreadsheet they submitted to the trial court; and the trial court relied upon the Carters' spreadsheet in making its actual damages amount determination. Although the Carters acknowledge that the calculations they submitted to the trial court were incorrect, they maintain that Dempsey's calculations were also incorrect. Accordingly, we remand this issue to the trial court with instructions for a hearing to determine the correct amount of actual damages amount owed on the Land Contract balance.

## III. *Attorney Fees*

Lastly, Dempsey claims that the trial court erred in awarding the Carters' attorney fees and not awarding attorney fees to him. In Indiana, litigants are

generally obligated to pay their own attorney fees in the absence of a statute, agreement, or stipulation authorizing such an award. *Holliday v. Crooked Creek Villages Homeowners Assoc., Inc.,* 759 N.E.2d 1088, 1095 (Ind.Ct.App.2001). Accordingly, a contract allowing for recovery of attorney fees is enforceable, if the contract is not contrary to law or public policy. *Id.* The amount recoverable for an award of attorney fees is left to the sound discretion of the trial court. *Id.* An award of attorney fees will be reversed only for an abuse of discretion. *Id.* The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* The amount of the trial court's award of attorney fees must be supported by the evidence.

Section 18 of the Land Contract, states, in pertinent part:

> [The Carters] and [Dempsey] agree and acknowledge that, in the event either party breaches this Contract, the non-breaching party's remedies at law would be inadequate, and the non-breaching party shall be entitled to seek and obtain immediate and permanent injunctive relief and other equitable relief, including but not limited to specific performance, temporary and permanent restraining orders, and other injunctive relief, along with reasonable attorney's fees, costs and expenses of pursuing available equitable and legal remedies related to any breach of this Contract.

(Appellant's App. p. 24). In the instant case, Dempsey clearly defaulted on the Land Contract. Thus, based upon paragraph 18 of the Land Contract, the Carters are entitled to recover attorney fees in their pursuit to recover any costs associated with Dempsey's default. In addition, the Carters specifically requested attorney fees in their complaint. Therefore, we find that the trial court did not abuse its discretion in its award of attorney fees to the Carters. *See Holliday,* 759 N.E.2d at 1095.

Nevertheless, Dempsey claims that the trial court erred in not awarding attorney fees to him. Specifically, Dempsey maintains that since the Carters were awarded attorney fees, likewise, he should be awarded attorney fees. However, the record is devoid of any supporting evidence for Dempsey's claim. Accordingly, we find that the record supports the trial court's decision not to award attorney fees to Dempsey.

### IV. *Judgment of Forfeiture v. Judgment of Foreclosure*

On cross-appeal, the Carters argue that the trial court erred in granting summary judgment for foreclosure rather than forfeiture. Specifically, the Carters contend that the forfeiture provision in the Land Contract should be enforced because it is the product of an express and freely entered into agreement between themselves and Dempsey, set forth in clear and unambiguous language.

As noted above, construction of a written contract is a question of law for the trial court for which summary judgment is particularly appropriate. *Candlelight Properties, LLC v. MHC Operating Ltd. Partnership,* 750 N.E.2d 1, 15 (Ind. Ct.App.2001). Whenever summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Id.*

In the instant case, the trial court found that based upon *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641 (1973), the proper remedy for the Carters is fore-

closure rather than forfeiture. Now, the Carters maintain that the trial court erred in not granting summary judgment for forfeiture in their favor. In particular, the Carters assert that paragraphs 14 and 15 of the Land Contract give the Carters the authority to seek possession of the Real Estate and to remove Dempsey therefrom. (Appellant's App. pp. 22–23). The Land Contract's forfeiture provision states, in pertinent part:

> Once [Dempsey] has paid in principal, five percent of the purchase price, or $12,000 additional principal after the $8,000 allowances and $5,000 payment at closing under paragraph 1a above, [the Carters are] prohibited from canceling the contract upon the uncured default dates of paragraph 14, but must on or after said dates, proceed with foreclosure. Until said 5% has been paid, [the Carters] may, at [the Carter's] option, cancel this Contract and take possession of the Real Estate, and remove [Dempsey] or those holding or claiming under [Dempsey] therefrom, without any demand and to the full extent permitted by applicable law.
>
> In the event of [the Carters'] cancellation upon such uncured default by [Dempsey], all rights and demands of [Dempsey] under this Contract and in and to the Real Estate shall cease and terminate and [Dempsey] shall have no further right, title, or interest, legal or equitable, in and to the Real Estate and [the Carters] shall have the right to retain all amounts paid by [Dempsey] toward the Purchase Price as an agreed payment for [Dempsey's] possession of the Real Estate prior to such uncured default. Such retention shall not bar [the Carters'] right to recover damages for unlawful detention of the Real Estate after uncured default, for any failure to pay taxes or insurance, for failure to maintain the Real Estate at any time,

for waste committed thereon or for any other damages suffered by [the Carters], including reasonable attorney fees incurred by [the Carters] in enforcing any right hereunder or in removing any encumbrance on the Real Estate made or suffered by [Dempsey].

(Appellant's App. p. 23).

In *Skendzel*, 301 N.E.2d at 641, our supreme court held that in all but a few specific instances, the proper relief to be granted a vendor upon the vendee's material breach of a land sale contract was not a forfeiture but a judgment of foreclosure pursuant to Trial Rule 69(C) and the mortgage foreclosure statute, Ind.Code § 32–8–16–1. Our supreme court outlined the limited situations in which forfeiture would be justified:

> This is not to suggest that a forfeiture is an inappropriate remedy for the breach of all land contracts....Forfeiture would also be appropriate where the vendee has paid a minimal amount on the contract at the time of default and seeks to retain possession while the vendor is paying taxes, insurance and other upkeep in order to preserve the premises....However, a court of equity must always approach forfeitures with great caution, being forever aware of the possibility of inequitable dispossession of property and exorbitant monetary loss. We are persuaded that forfeiture may only be appropriate under circumstances in which it is found to be consonant with notions of fairness and justice under the law.

*Skendzel*, 301 N.E.2d at 650.

Here, the Carters maintain that forfeiture is appropriate under the *Skendzel* exception because Dempsey had paid a minimal amount on the Land Contract at the time of default, and because Dempsey retained possession thereafter while the

Carters paid taxes on the Real Estate. Conversely, Dempsey argues that pursuant to paragraph 15 of the Land Contract, he has paid $25,000.00 in principal payments and that, as a matter of contract, forfeiture is no longer available to the Carters. We agree.

The Carters rely upon *Goff v. Graham,* 159 Ind.App. 324, 306 N.E.2d 758 (1974), for the proposition that forfeiture is appropriate in the instant case because this court permitted forfeiture in that case. However, we find *Goff* distinguishable. In particular, *Goff* falls within the *Skendzel* exceptions because the purchaser paid not only a minimal amount upon the contract, but committed waste upon the property, as well. Here, the record shows that Dempsey made several repairs and improvements upon the Real Estate, thereby increasing the Real Estate's value. "Whether a particular sum paid toward a particular contract price is minimal depends upon the totality of the circumstances surrounding the contract and its performance." *Johnson,* 472 N.E.2d at 626. Based upon the totality of the circumstances, it is evident that Dempsey did not commit waste upon the Real Estate, but rather improved the condition and value of the Real Estate. Accordingly, we find it improper to conclude, as a matter of law, that Dempsey's payment was so minimal as to make forfeiture the preferable remedy.

Moreover, as stated above, the actual damages amount awarded to the Carters by the trial court is in dispute. In particular, both Dempsey and the Carters concede that the trial court erred in calculating the principal, interest, tax and insurance amount that is owed by Dempsey based upon his multiple defaults. Accordingly, there is no appropriate way for this court to determine the amounts paid by Dempsey and still owed to the Carters

to determine whether a "minimal" amount was paid. *See Skendzel,* 301 N.E.2d at 650. Therefore, we find that the trial court did not err in granting the Carters' motion for summary judgment and request for an order of foreclosure rather than forfeiture.

### CONCLUSION
Based on the foregoing, we conclude that the trial court did not err in granting the Carters' Motion for Summary Judgment and Request for Foreclosure. However, we remand to the trial court with instructions to re-calculate the actual damages amount owed to the Carters by Dempsey.

Affirmed in part, reversed and remanded, in part.

SHARPNACK and BARNES, JJ., concur.